IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JACQUELEN WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-05-RRA-1000-W |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| MENTAL HEALTH AND | ) | |
| MENTAL RETARDATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is a civil action filed by the plaintiff, Jacquelen Williams, against the defendant, the Alabama Department of Mental Health and Mental Retardation (designated originally in the complaint as "Bryce Hospital" but hereinafter referred to as "the Department"). The complaint arises out of the plaintiff's employment with Bryce Hospital in Tuscaloosa, Alabama. In the only count of the complaint, the plaintiff alleges that while she was employed at Bryce Hospital the defendant, by terminating her employment, discriminated against her based upon her gender, in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, codified at 42 U.S.C. § 2000e, *et seq.* This case is before the court on the motion for summary judgment filed by the defendant. (Doc. 16).

### SUMMARY JUDGMENT STANDARD

In conducting [a summary judgment analysis], [the Court must] view all evidence and factual inferences in the light most favorable to the nonmoving party. . . . Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

> summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment. *Id.*

*Lofton v. Secretary of Dept. of Children and Family Services,* 358 F.3d 804, 809 (11th Cir. 2004).

## FACTS[1]

The defendant is a statutorily created agency of the State of Alabama. It has been established for the care, treatment, and training of the state's citizens suffering from serious mental illness and mental retardation. For many years, Bryce Hospital has been one of a number of in-patient facilities operated by the defendant for the treatment of individuals with serious mental illness. Pursuant to state law, the Department, through its Commissioner, promulgates policies relating to a wide range of matters, including the protection of patients from abuse.

The plaintiff was originally employed at Bryce Hospital in July of 1997, as a Mental Health Worker I. She worked as a Mental Health Worker I for approximately two years, at which time she was promoted to a Mental Health Worker II position. Upon her promotion, the plaintiff was transferred to the Two North Unit at Bryce Hospital, where she worked until her employment ended on October 6, 2004. During the majority of her employment, and at the time of her termination, the plaintiff was assigned to the Two North Unit, where she worked on the first floor and on the 3:00 p.m. to 11:00 p.m. shift. As a Mental Health

---

[1] The facts as outlined herein are presented, as this court must, in the light most favorable to the non-movant. In some but not all cases, disputes in the facts are indicated.

Worker II, the plaintiff had responsibilities involving direct patient care, as well as supervisory responsibilities.

On July 26, 2004, Gloria Robinson, RN, a female, completed a Bryce Hospital Incident Report form. *Bryce Hospital Incident Report Completed by Gloria Robinson on July 26, 2004,* at 1. The form discussed a number of newly hired Mental Health Worker I's, who were participating in orientation on July 22, 2004, on the Two North Unit (also referred to as the Basic Rehabilitation Unit or BRU). *Id.* The report stated that these workers had reported that the plaintiff had acted inappropriately toward a patient. *Id.* The incident report stated that the plaintiff had snatched at and "popped" a patient's hand. *Id.* The report further quoted the new Mental Health Workers as having described the plaintiff's behavior as being "'too aggressive' and not like they had learned in class." *Id.* The allegations made by the orienting Mental Health Workers were referred for investigation.

Officer Susie Patrick of the Bryce Hospital Police Department conducted an investigation. She interviewed the orienting Mental Health Workers as well as the involved patient and the plaintiff. Officer Patrick wrote the following:

> Based upon the presenting evidence, this case is being substantiated on physical and verbal abuse. It appears that while on the courtyard, Ms. Williams noticed Mr. [redacted] with food and other items in his pocket which he has a habit of doing. Ms. Williams and Mr. [redacted] began getting the items out of his pocket. As she pulled items out of this pocket, she was heard stating, get this shit out of your pocket, what is this shit, put this shit down. As Mr. [redacted] pulled items of his pocket, she was observed hitting his hands so that the items could fall while continuing to curse him. Ms. Williams was also seen "snatching" Mr. [redacted] by this shirt. It is also important to mention that Ms. Williams and a co-staff has allegedly told the (Orientees) Mental Health Workers that if they "snitch," the patients would "jump on them" and staff would not stop them.

*Investigation Summary*, at 4.

3

Consistent with departmental procedure, the investigation conducted by Officer Patrick was reviewed by the Bryce Hospital Investigation Review Panel on August 9, 2004. Members of this panel were Dr. Ron McCarver, male, Hospital Risk Manager; Sharon Reed, RN, female, Bryce Hospital Director of Nursing; Dr. Kim Sturdivant, female, Patient Advocate; Christy Raney, female, Alabama Disabilities Advocacy Program; Joe Stringer, male, Director of the Bryce Hospital Behavioral Rehabilitation Unit (Two North); and Mary Petty, female, Bryce Hospital Clinical Investigator. The Investigation Review Panel concluded that there was sufficient evidence to support the allegation of physical and verbal abuse of a patient by the plaintiff. Also consistent with departmental procedure, the investigation and the results of the Investigation Review Panel review were referred to David Bennett, Bryce Hospital Director, for a final decision.

David Bennett, a male, was appointed the Acting Director of Bryce Hospital in July, 2004, and appointed permanent Director in October, 2004. He has been employed by the Department since April 23, 1999. Bennett signed the Investigation Disposition form on August 10, 2004. *Investigation Disposition*, at 1. In that form he wrote that he "agreed" with the Investigation Review Panel and stated that "[t]here is sufficient evidence to substantiate the allegation of Physical [sic] and verbal abuse." *Id.* He stated that the plaintiff would be terminated for violation of Department policy 19-10, Client Abuse, Neglect, Mistreatment and Exploitation. *Id.*

As a result of this determination by the Bryce Hospital Director, on August 31, 2004, a letter was sent to the plaintiff by Jim Elliott, the Acting Bryce Hospital Human Resources Director, stating that the allegations of abuse made against her had been substantiated by an

4

investigation. *Letter from Jim Elliot Dated August 31, 2004*, at 1. The letter also stated that, as a consequence, disciplinary action was being considered which could result in the plaintiff's employment being terminated. *Id.* Finally, this letter offered the opportunity for the plaintiff to meet with Bennett on September 9, 2004, to respond to the allegations. *Id.* Again, this letter was sent to the plaintiff *after* Bennett had noted, on August 10, 2004, that the plaintiff "will be terminated for violation of DMH/MR policy 19-5, Physical and Verbal Abuse." *Investigation Disposition*, at 1.

David Bennett met with the plaintiff on September 9, 2004, to hear her response to the abuse allegations. Mr. Bennett also met with witnesses that the plaintiff had brought with her to the meeting. Regarding these meetings, the plaintiff testified as follows:

> Q.   Okay. Now, you recall meeting twice with David Bennett about these allegations against you; is that correct?
>
> A.   Uh-huh (affirmative). Yes.
>
> Q.   And during the second occasion he met with you he asked you again to explain what really went on during this incident involving Mr. C; right?
>
> A.   Yes.
>
> Q.   Do you remember what you told him?
>
> A.   I don't recall word for word what I told him, but I told him that as far as that day I don't remember being with Mr. C. I'm sure I was around him those three hours, I'm sure I was around him those three hours, I'm sure I was, that I don't recall an incident of any sort that took place that day.
>
> Q.   In fact you told him you didn't remember having any interaction at all with Mr. C. on that day?
>
> A.   Exactly.

*Deposition of Jacquelen Williams*, at 73-74.  As a result of information provided by the plaintiff, Bennett instructed Susie Patrick, the investigator, to interview additional witnesses. Bennett also met a second time with the plaintiff.[2]

The stated policy of the department is that physical abuse "shall result in disciplinary action of termination."  *DMH/MR Policy 19-10*, at 2.  However, that same policy provides:

> Deviations from the above standards can be made when extenuating circumstances warrant imposing either more or less severe penalty. Progressive discipline is to be used to the extent possible for the violation of the policy. Deviations for extenuating circumstances include, "fairness."

*Id.* After considering all of the information presented, Mr. Bennett decided to terminate the plaintiff's employment with the Department.

The plaintiff appealed her termination to the State of Alabama Personnel Board.  Julia J. Weller was appointed as an Administrative Law Judge to conduct an administrative hearing and make findings of fact and recommendations to the Personnel Board.  The administrative hearing was held over two different days, November 15, 2004, and November 29, 2004.  The plaintiff was represented by counsel at this hearing and was afforded the opportunity to call her own witnesses and to cross-examine witnesses called by the Department.  The plaintiff again denied having any contact with the patient on the day in question and claimed that the orienting Mental Health Workers had conspired to have her fired so that they would not have to work with her.

---

[2]  Again, the plaintiff disputes such meeting, but both the plaintiff and defendant's cited sections of the record support the defendant's version.

On December 17, 2004, the Administrative Law Judge issued Recommended Findings of Fact and Conclusions of Law, finding that the abuse incident was supported by the evidence and recommending that the plaintiff's termination be upheld.  By order dated January 19, 2005, the Personnel Board of the State of Alabama adopted the findings of fact and recommendations of the Administrative Law Judge and upheld the decision of the Department to terminate the plaintiff from employment.

The parties agree that progressive discipline is to be used to the extent possible for violation of the abuse policy. Deviations can be made in the progressive discipline for extenuating circumstances, including fairness. Mr. Bennett testified:

> A.  Now, I do understand that there may be extenuating circumstances by which a person could slap an individual's hand, and I certainly would take that under consideration in making whatever decision I would render.
>
> Q.  What extenuating circumstances can you think of that might cause less punishment than termination?
>
> A.  Well, if a person who, let's say, has been working with a patient for a number of years or whatever and they know that client's behavior, and the client does whatever --- they come over, you know, taken this out of your hand, try to brush it out, that kind of thing.

*Deposition of David Bennett*, at 25.

The evidence shows that there were inconsistencies in the testimony against the plaintiff.  Three brand new employees made the accusations against the plaintiff. One new employee did not substantiate the claims of the other three. There was no objective medical evidence of a physical injury to the patient.  The patient said nothing about being hit on the hand, but did claim to have been snatched by the back of his shirt.  The patient had a medical history of being confused at times, having poor judgment, being forgetful, and suffering from

dementia. The plaintiff presented witnesses who said she did nothing wrong,[3] and they outnumbered the number of people who said the plaintiff did something wrong. The evidence also showed that the plaintiff had known and dealt with this patient for a long time, and she had previously encountered him hiding food. This complaint was the first of its nature against the plaintiff. The plaintiff's work history revealed no disciplinaries and favorable evaluations. Bennett did not review the videotape, but did see the investigation report's statement that the videotape did not show the plaintiff. Bennett did not speak to the plaintiff's accusers. Although Bennett considered the patient's statement, Bennett did not speak to him. Bennett testified that it occurred to him that the plaintiff denied wrongdoing because she did not do anything wrong. Ultimately, however, Bennett believed the three accusers instead of the plaintiff and her witnesses.

Since the time Mr. Bennett has been either Acting Director or Director of Bryce Hospital through October 15, 2006, he has made decisions in eleven cases in which an investigation has substantiated an allegation of the physical abuse of a patient by a Bryce Hospital employee. Of these eleven cases, six involved male employees and five have involved female employees. In four of these eleven cases, David Bennett made the decision either to impose no discipline or discipline less than termination. Of the four cases wherein the employee was not terminated, three were male employees and one was a female employee.[4]

---

[3] This is an uncontested statement of fact, without explanation. It is not known whether such witnesses thought the plaintiff was not the kind of person to do what was alleged, or whether they thought there was nothing wrong with slapping and cursing a patient. It should be remembered that the plaintiff denied doing anything at all.

[4] The parties did not present evidence concerning the seven instances where no disciplinary action was taken.

Mr. Bennett testified that in the three cases involving the male employees, in which termination was not imposed, he determined that they had been in the difficult position of having to deal with aggressive patients. *Affidavit of David Bennett*, at 3.[5] Those employees were Levon Baker, Wilbert Cody, and Willie Rice.

  The plaintiff testified to her belief that she was discharged because of discrimination:

  Q. Why do you believe that gender was the reason for your termination?

  A. I feel that gender was a reason because the male staff were accused of what I was accused of. I didn't do this allegation. There were no evidence. The men were accused. There were evidence and there were no disciplinary actions taken toward the men and there were against me.

*Deposition of Jacqueline Williams*, at 78.

  The reasons given by Bennett for the plaintiff's termination of employment were striking a patient on the hand and using abusive language while doing so. Either of these offenses could have resulted in the termination of the plaintiff. *See State of Alabama Department of Mental Health and Mental Retardation Policy Statement 19-10*, at 2.[6] Bennett testified that his decision to terminate the plaintiff was in no way related to her gender, and that he made the decision to terminate her employment because he believed the investigator's findings that the plaintiff had physically and verbally abused a patient. Further, he stated that the plaintiff denied having any contact with the patient on the morning in question, and,

---

[5] The plaintiff disputes this evidence, but there can be no doubt that this is Bennett's testimony.

[6] The plaintiff states that verbal abuse alone would not have been enough to terminate the plaintiff. In support of that assertion she cites Bennett's statement that "in his mind" that alone would not have been a dischargeable offense. Department policy states otherwise however. Mr. Bennett recognized that fact elsewhere in his deposition. *See Deposition of David Bennett*, at 14. The evidence shows that Bennett has not fired anyone for verbal abuse alone.

therefore, he decided that she was actually lying about the incident. Finally, Bennett testified that he made the decision to terminate based entirely on reasons related to the appropriate functioning of Bryce Hospital. The plaintiff's "belief" that Bennett discriminated against her is not evidence. The court will now set out the facts in the cases of Baker, Cody, and Rice, whom the plaintiff contends are comparators who were treated more favorably than she was treated.

Lavon Baker: One of the plaintiff's comparators is Mr. Lavon Baker. A patient called the Bryce Police Department to report that he had been choked and his right arm hurt by Baker and a co-worker, Billy Parham. The investigator found the allegations of patient abuse against Baker to be substantiated. The review panel and David Gay, Bennett's predecessor, found sufficient evidence of physical abuse to warrant terminating Baker's employment. Mr. Gay made this finding in an undated Investigation Disposition Form[7] where he wrote, "I agree with the IRP. There is sufficient evidence to substantiate the allegation of physical abuse. Mr. Lavon Baker, MHW will be terminated for violation of DMH/MR policy 19-10, physical abuse." *Investigative Disposition of Baker,* at 1. (This is the exact same language used in this plaintiff's Investigation Disposition, which is the form language the plaintiff contends shows that the decision to fire her was made before the additional investigation took place.)

In spite of this "Baker will be terminated" language, a final decision had not been made, as Bennett, who apparently assumed Gay's duties at this point in time, thereafter found Baker guilty only of mistreatment, not physical abuse, and gave him a one-day suspension

---

[7]  By its language, the form had to have been completed some time after June 16, 2004.

10

instead of firing him. *Recommendation for Personnel Action*, at 1. That decision was based, at least in part, on Bennett's *further investigation* of the incident. In his deposition, Bennett testified:

> A.  During [Mr. Baker's] meeting with me and his description of how the incident occurred, he stated that the patient had come across the nursing – nurse's station entrance, had jumped in, had gone into I believe the nutrition room and had taken out a drink and that the patient was threatening.
> There was another employee who was there, and that employee was trying to get the patient to leave the area. And Mr. Baker indicated that he came behind the patient.
> The patient had been threatening thought he was going to hurt someone, and he grabbed the patient from behind.
> And when he grabbed the patient, the patient jerked back in his direction. And during that process of trying to manage the individual that he inadvertently applied the wrong hold.
> And that's how a decision was reached that it was mistreatment rather than physical abuse.

*Affidavit of David Bennett*, at 43-44.[8]

The patient claimed Baker hit his arm on the desk, which, if true, could be deemed physical abuse. Bennett did not address that abuse with Baker, although it was raised in the investigation. Bennett testified that he "knew at the time that the investigation concluded that there was enough evidence to substantiate the violation of the physical abuse." *Id.* at 104. Bennett did not look at the video[9] or talk to the patient (just as he did not view the video or talk to the patient in the instant plaintiff's case). Bennett acknowledged that "from a person

---

[8]  The parties agree that mistreatment can overlap with verbal and/or physical abuse; it is a judgment call.

[9]  The plaintiff further states what the video showed. The cited deposition sections are not of the *deponent* stating what the video shows, but instead are of what the deponent states someone else told him the video showed. Such testimony is inadmissible hearsay and will not be considered. Similarly, the plaintiff's assertion that the video is inconsistent with Mr. Baker's story is not supported by the evidence cited.

11

on the outside looking in, it could very well have been interpreted that's patient abuse; that's physical abuse." However, Bennett found that, at the time Baker took physical action against the complaining patient, the patient was threatening others, Baker believed the patient was about to hurt someone, and the use of some force against the patient was necessary to end the disturbance caused by the patient. *See Baker Investigation Report for full details*.

Wilbert Cody: Another of the plaintiff's comparators is Mr. Wilbert Cody. Cody was involved in an altercation with a patient that involved alleged verbal abuse and biting. If the accusation were true, Cody would have been in violation of both the verbal and physical abuse policy, the same policy the plaintiff was found to have violated.

The patient said Cody bit him. Another patient stated that he saw Cody open his mouth on the patient's blue jeans near the thigh. It was medically determined that there was a bruise that the doctor said looked like teeth marks. The investigator concluded that Cody had bitten the patient. Although Bennett states in his deposition that he had no evidence that anyone else bit the patient, formed the opinion that the teeth marks could have been made by another patient. *Deposition of David Bennett*, at 128. There was, however, evidence that this patient physically attacked Cody and took him to the floor, making some use of force against the patient necessary. *See Cody Investigation Report for full details*.

Willie Rice: The plaintiff's last comparator is Mr. Willie Rice. A patient reported that Rice had hit another patient in the eye three times. The patient had a bruise under his left

eye, which was a clear indication of some kind of injury.[10] A charge of physical abuse was substantiated by the investigator.

Bennett believed Rice's account of the incident. Bennett chose not to talk to the patients. Bennett did not discipline Rice because Rice told him the patient had been "upset." Bennett stated in his deposition:

> Q. So was there any particular reason that you did not believe the patient and the patient's witness on this?
>
> A. The fact the patient was upset.
>
> Q. What about the patient witness?
>
> A. We took – that was taken out of consideration, yes.

*Deposition of David Bennett*, at 138. What the witness meant when he stated the patient was "upset" is disclosed in the Investigation Report. That report describes a physical assault by the patient against Rice. *See Rice Investigation Report for full details*.

## ANALYSIS

The plaintiff claims that the decision to terminate her employment with the Department was based on considerations of gender in violation of Title VII of the Civil Rights Act of 1964, as amended.

---

[10] The plaintiff also writes:

> 30. It was reported to Bennett that Rice sat on the patient's waist and hit him in the eye three times (Bennett @ 133, 134). An RN had to wipe blood off the victim's face and forehead (Bennett @ 134). It is never appropriate for an employee to sit on a patient and hit them in the eye several times (Bennett @ 133).

*Opponents' Submission in opposition*, at 11. The cited sections do not support the plaintiff's statements.

When there is no direct evidence of discrimination, as there is not in the instant case, a plaintiff must rely on circumstantial evidence to prove discrimination. *See McCarthney v. Griffin-Spalding County Bd. of Educ.*, 791 F. 2d 1549 (11th Cir. 1986). To prove a prima facie case of discrimination based on circumstantial evidence, the plaintiff must show that 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was treated less favorably than a similarly situated individual outside her protected class. Once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to offer a non-discriminatory legitimate reason for the adverse employment action. The burden then shifts back to the plaintiff to show that the employer's stated reason for the action was a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Combs v. Plantation Patterns*, 106 F. 3d 1519 (11th Cir. 1987); *Cuddeback v. Florida Board of Education*, 381 F. 3d 1230 (11th Cir. 2004). The court has described the pretext burden:

> "[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Brooks v. County Comm'n,* 446 F.3d 1160, 1163 (11th Cir. 2006) (citation and quotation marks omitted) (alternations in original). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Wilson,* 376 F.3d at 1088. The plaintiff can show pretext through evidence that (1) a discriminatory reason more likely motivated the employer or (2) the employer's reasons are unworthy of credence. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997). The plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels,* 408 F.3d at 771 (citation and quotation marks omitted). Where multiple reasons are advanced, the plaintiff must show that each reason was pretextual. *Cooper v. Southern Co.,* 390 F.3d 695, 725-26 (11th Cir.2004). Moreover, "[a] reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.' " *Brooks,* 446 F.3d at 1163 (citation and emphasis omitted).

*Champ v. Calhoun County Emergency Management Agency,* No. 06-14364, 2007 WL 879846, *3 (11th Cir. March 26, 2007).

For purposes of the prima facie evaluation, the defendant concedes that the plaintiff is a member of a protected class and that she suffered an adverse employment action. The court thus turns to the third prong of the requirements for establishing a *prima facie* case of discrimination pursuant to Title VII, which is whether the plaintiff was treated less favorably than a similarly situated male employee or employees. The plaintiff claims that the three male employees, Levon Baker, Willie Rice, and Wilbert Cody, who were given no disciplinary action or action less than termination by David Bennett, are similarly situated for the purposes of establishing a *prima facie* case of gender-based discrimination. The defendant argues, however, that the situations of these three males were so different from the plaintiff's situation that they cannot be considered comparators.

In a recent Eleventh Circuit case, *Roland v. United States Postal Service*, 200 Fed. Appx. 868 (11th Cir. 2006), the court considered the allegations of a black postal worker who claimed that she was demoted and discriminated against due to her race. Roland had been demoted due to allegations that she had conducted private business activities while at work. She claimed, though, that a white employee who had used his official vehicle to deliver his wife's business products had not been disciplined. The Eleventh Circuit agreed with the trial court that the two employees were not similarly situated for the purpose of establishing a *prima facie* case of race based discrimination pursuant to Title VII. In so finding, the court quoted with favor another Eleventh Circuit opinion, which stated that "'[i]n determining whether employees are similarly situated for purposes of establishing a *prima facie case*, it is

15

necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.' *Holifield v. Reno*, 115 F. 3d 1555, 1562 (11th Cir. 1997)." The *Roland* court further stated that "[t]he comparator must be 'nearly identical' to the plaintiff in order to prevent courts from second-guessing a reasonable decision by the employer."

The court concludes that Baker, Rice, and Cody do not qualify as comparators. Baker, Rice, and Cody's physical contacts with the patients were taken in response to the patients' physical acts of aggression directed against them. In the plaintiff's case, there was no evidence that the patient was being aggressive toward her in any way. The plaintiff herself stated that she had no contact at all with the patient on the occasion in question, a statement which Bennett considered a lie. Therefore, it is concluded that because of these crucial differences between the incidents involving the male employees and the incident involving the plaintiff that the plaintiff has failed to establish evidence sufficient to make a factual issue for her claim that she was treated less favorably than a similarly situated male employee or employees and she has failed, therefore, to make out a prima facie case of discrimination. The plaintiff loses her case at this point.

Even if the plaintiff had established a prima facie case of discrimination, she still cannot survive the defendant's summary judgment motion because she cannot show evidence sufficient to make a factual issue that the defendant's reason for firing her was a pretext for discrimination. The plaintiff contends that the "will be fired" language evidences discrimination as it shows that Bennett had made up his mind to fire the plaintiff before all the evidence was gathered. This assertion is negated by the fact that this language is mere form

16

language that is used without a meaning of finality, for this same language was used in the Baker case. In that case, despite the use of that language, there was further investigation, and Bennett decided, in the end, not to fire Baker. So, too, there was further investigation in the plaintiff's case. Bennett interviewed the plaintiff and, as a result of information provided by her, instructed Officer Patrick to interview additional witnesses. Bennett then met a second time with the plaintiff. Although Bennett did not view the video or speak to the patients or other accusers in the plaintiff's investigation, neither did he look at the video or talk to the patient in his investigation of Baker's case or talk to the patients in his investigation of Rice's case.

Department policy provided for termination of employees who were found to have abused a patient, and, therefore, the plaintiff's firing, based on Bennett's finding that she violated that policy, was appropriate. Moreover, the incident report was filed by a female, the investigation was conducted by a female, and the Investigation Review Panel was comprised of two males and four females. It was only after all of these people had examined the facts in the plaintiff's case and found substantiation of abuse that the matter even got to David Bennett.

Wherefore, it is concluded that the plaintiff cannot show that (1) a discriminatory reason more likely than not motivated Bennett's decision to fire her or (2) that his reasons are unworthy of credence because of "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Bennett's] proffered legitimate reasons for [his] actions so that a reasonable factfinder could find them unworthy of credence." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004).

DECISION

Wherefore, the defendant's motion for summary judgment is due to be granted and this action dismissed, on the ground that the plaintiff has not established a prima facie case of discrimination, or, alternatively, that the plaintiff has failed to make out a case that the legitimate, non-discriminatory reason given by the defendant for firing her was merely a pretext for gender discrimination.  An appropriate order will be entered.

DONE this 25th day of June, 2007.

_/s/ Robert R. Armstrong_
Robert R. Armstrong, Jr.
United States Magistrate Judge